Nichols, Judge,
delivered the opinion of the court:
This case is closely related to the consolidated cases of Select Tire Salvage Co., Inc. v. United States, No. 325-62; and The Connecticut Tire Company, Inc. v. United States, No. 326-62, decided this day, ante, p. 695. In those cases, the plaintiffs were importers of tire carcasses who, in turn, sold the items imported to firms engaged in the actual recapping process. The only factual distinction between those cases and this case is that the plaintiff in the instant case is itself a re-capper of tire carcasses and that it actually did recap those tire carcasses which it imported.[1] The opinion in Select and Connecticut, holding the imported tire carcasses not to be “tires” taxable under Section 4071(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 4071(a)), applies equally to the facts herein.
In Select and Connecticut the Government bottomed its position on Sections 4071 and 4072 of the Internal Revenue Code of 1954. In the instant case, the Government’s starting point was Section 4218(a) (2).[2] Briefly, that Section places a tax upon the manufacturer, producer, or importer of a tire who “uses it” and provides for equating such “use” with a sale under Section 4071. Apparently the Government by this rationale hopes not to disturb the holding in Skinner v. United States, 8 F. Supp. 999 (S.D. Ohio, 1934), that a re-treader is not a “manufacturer”, as to domestic carcasses, but to avoid any application of the case to foreign carcasses. At this time we need not decide whether Gordy “used” the *715 imported tire carcasses when it recapped them, so as to subject them to tax. It is enough to state that the item that is “used” must be a “tire.” And, under the principles set forth in Select and Connecticut, the tire carcasses imported and retreaded by Gordy were not “tires.”
For the reasons enunciated herein, judgment is entered for the plaintiff. The amount of recovery will be determined pursuant to Eule 47 (c).
Collins, Judge^ took no part in the decision of this case.
BINDINGS OF FACT
The court having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a corporation having its main place of business in Atlanta, Georgia. It has been in the business of buying, selling, recapping (otherwise known as retreading) and otherwise dealing in tires of all sorts for over 20 years and is one of the largest independent tire dealers in the United States.
2. As part of its tire recapping business, plaintiff had purchased tire carcasses from domestic suppliers. It then recapped such carcasses and sold recapped tires resulting from this operation, both at wholesale and retail. Because of a short supply of a particular size on the domestic market and also because of a price differential, it began in late 1958 to purchase tire carcasses from European sources.
3. There is a clearly recognizable distinction in the tire industry between a “tire” and a “tire carcass.” A tire carcass is the remains of a tire, the tread design of which has, for practical purposes, been worn smooth. Within the tire industry tire carcasses are also known as tops, casings, cores, skids, bottoms or skins.
4. During the period of October 1, 1958 to December 31, 1958, the plaintiff imported 4,000 used tire carcasses having a total weight of 70,548 pounds. A tire carcass, such as that imported by plaintiff, is generally considered unsafe for use on a highway motor vehicle because the lack of a tread pattern creates a skidding hazard on a wet roadway. It *716 is not considered unsafe fer se to use a tire carcass on a dry roadway, but, because a driver never knows whether the roadway will be wet or dry, the average tire buyer would not buy a tire carcass for ordinary use on his car. However, there are some fugitive uses of imported tire carcasses on motor vehicles in their imported condition. And, some original equipment tires are likewise used until worn down to the condition of carcasses, or worse.
5. Of the 4,000 tire carcasses referred to in the preceding finding, not less than 15 percent had been originally manufactured and sold in the United States. As to such carcasses, the defendant concedes that the plaintiff is entitled to a refund of excise taxes paid, plus interest.
6. Of the 4,000 tire carcasses imported by plaintiff 2,849 were recapped and sold by plaintiff and the balance (1,151) was determined to be unfit for recapping. About one-half of this number was given away or destroyed and the remainder sold as scrap. Some small number sold were subsequently resold to persons who used them on highway vehicles.
7. Section 4071(a) of the Internal Eevenue Code, 1954, places a tax upon the sale of tires by a manufacturer, producer or importer thereof. The tax is a specified amount per tire pound. During the period October 1, 1958 to December 81, 1958, the rate on “tires of the type used on highway vehicles” (26 U.S.C. § 4071, 1958 ed.) was 8 cents a pound. Today the rate on said tires is 10 cents a pound. (26 U.S.C. § 4071, 1958 ed., Supp. III).
Section 4218(a) (2) of the Internal Eevenue Code, 1954, places a tax upon the manufacturer, producer, or importer of a tire who uses it and states that such person “shall be liable for tax * * * in the same manner as if such article was sold by him * * i.e., shall be liable for tax under Section 4071(a). The issue in this case is whether that tax is applicable to the tire carcasses imported by plaintiff.
8. The average weight of used tire carcasses imported by the plaintiff was 17.64 pounds. At a rate of 8 cents a pound, the tax sought to be imposed would average $1.41 per carcass, an amount equal to 70% of the carcass’ cost to plaintiff, that cost averaging $2 per carcass. Since plaintiff was advised *717 that the imported tire carcasses were claimed to be subject to the excise tax imposed under Section 4071(a) it has stopped importing the tire carcasses.
9. The plaintiff, when it sold the 2,849 recapped tires which resulted from the importation of the 4,000 tire carcasses, did not collect any excise tax from the purchasers of such recapped tires. It then, on the basis of tax advice received from its certified public accountant, was of the opinion that no excise tax was due to the United States. It is of course true that the 2,849 recapped tires were sold to purchasers who used them on highway vehicles.
10. A highway type tire has three basic elements: (1) an outer covering consisting of the sidewall and tread portions which protect the underlayers and are resistant to abrasion; (2) the structural element-cords and textile; and (3) an inner rubber membrane which is resistant to the transference of air.
11. The element of a pneumatic highway tire which determines the strength of the tire is the structural portion — the textile cords or plies. This is the element that withstands the air pressure in the tire and carries the weight.
12. In manufacturing a new tire, the tread rubber is either a portion of the sidewall rubber or is a separate piece of rubber placed upon the sidewall rubber. After the tread design is worn down there is still rubber (sidewall or tread) above the cords or plies. Retreading or recapping is a process of removing excess rubber and roughing the remainder by buffing, then applying rubber cement and raw rubber or camelback on the tread area of the tire carcass and placing it in a retread mold to form the tread design of the retreaded tire. A 6.70 x 15 tire carcass of European make weighs approximately 20 pounds. The camelback or raw rubber added to such a tire during the retreading process weighs 8 to 10 pounds.
13. Tire carcasses imported by plaintiff are sometimes used on the highway and there is a possibility that they are sometimes sold as used tires, but there is no evidence to show that such use or sale is other than infrequent. In any event, the parties have stipulated that the 4,000 tire carcasses imported *718 by the plaintiff were unsafe for general highway use on automobiles.
14. On or about February 13,1963, plaintiff filed with the Internal Revenue Service an excise tax return for the quarter ending December 31,1958, and with said return, paid $4,101.92 tax and $994.74 interest, for a total of $5,096.66.
15. On or about February 18,1963, plaintiff filed with the Internal Revenue Service a claim for refund in the amount of $5,096.66.
16. On March 22, 1963, the amount of $5,096.66 was assessed by the Internal Revenue Service and on that date there was also assessed a penalty under Section 6651(a) of the Internal Revenue Code of 1954 in the amount of $1,025.48. This penalty was paid on or about March 29,1963.
17. On September 15, 1965, additional excise tax in the amount of $1,541.92, and interest in the amount of $615.14 was assessed by the Internal Revenue Service for the quarter ending December 31, 1958. The amount of such assessment plus interest was paid on or about October 11, 1965, and a claim for refund was filed.
18. The plaintiff’s petition in this suit was filed on October 17,1963.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover the amount of excise tax paid by it on imported tire carcasses and the amount of the penalty which it paid, in connection with the importation of tire carcasses, together with interest, according to law. Judgment is entered for plaintiff, with the amount of such recovery to be determined pursuant to Rule 47 (c).

 It is appropriate to state at this point that the transcript of the testimony and the exhibits in Select and Connecticut were the subject of a stipulation of the parties here. That stipulation was that the testimony and exhibits may be considered as evidence in this case in order to obviate the necessity for a trial.

 Section 4218(a) (2) of the Internal Revenue Code of 1954 (26 U.S.C. 4218, 1952 ed., Supp, II) provided:
“§ 4218. Use by Manufacturer or Importer Considered Sabe.
“(a) General Rule. — if—
* * :j: # *
“(2) any person manufactures, produces, or imports a tire * * * and * * * uses it,
“he shall be liable for tax under this chapter in the same manner as if such article was sold by him * *